UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SPEAK UP WEKIVA, INC.                    CASE NO.:

    Plaintiff,

v.

GOVERNOR RONALD DeSANTIS,
in his Official Capacity as Governor of
Florida,

    Defendant.

_____

## **COMPLAINT**

Plaintiff, Speak Up Wekiva, Inc., through undersigned counsel, files this Complaint against Defendant, Governor Ronald DeSantis, in his official capacity as governor of Florida.  Plaintiff seeks declaratory and injunctive relief concerning Section 403.412(9)(a), Fla. Stat. (2020), which was part of Senate Bill 712, "Florida Clean Waterways Act," signed into law by Governor DeSantis on June 30, 2020. Section 403.412(9)(a) purports to preclude all Florida local governments from recognizing or granting any specific legal rights to any person, non-natural person, or political subdivision, "relating to the natural environment."

1

Plaintiff seeks a declaration that this statute is unconstitutional under the Ninth and Fourteenth Amendments to the United States Constitution by infringing upon Florida citizens' constitutional right to local, self-government; is unconstitutionally vague under the Fourteenth Amendment; violates Article I, Section 1, Article VIII, Section 1(g), and Article VIII, Section 2(b) of the Florida Constitution by infringing upon Home Rule Powers of counties and municipalities; has no preemptive authority because it fails to state a legislative intent to expressly preempt any field or area; and violates the "single-subject rule" of Article III, Section 6 of the Florida Constitution.

Further, Plaintiff seeks an injunction compelling Defendant to refrain from enforcing this unconstitutional preemptive statute, and for an order enjoining the Defendant from using provisions of that statute to interfere with a vote by Orange County residents on a proposed charter amendment on November 3, 2020—an amendment which would recognize heightened legal protections for Orange County waterways. In support of its complaint, Plaintiff asserts:

## Parties

1.      Plaintiff, Speak Up Wekiva, Inc. ("Speak Up Wekiva"), is a Florida not-for-profit corporation dedicated to conserving and protecting Florida's shared natural resource lands and waters held by the State of Florida in conservation for the people and the Greater Wekiva River Basin.    Speak Up Wekiva has over 2,200 members and has a principal place of business in Orange County, Florida.

2

Speak Up Wekiva has a particular focus and concern with protecting the Wekiva River, its tributaries and springsheds, as well as other natural water bodies in Orange County and Central Florida. Speak Up Wekiva members enjoy recreating on the Wekiva River and other Orange County water bodies. Charles O'Neal, the president of Speak Up Wekiva, resides in Orange County, Florida and recreates on the Wekiva River.

2.      Speak Up Wekiva and its members are negatively impacted by Section 403.412(9)(a) because this law may preempt and prohibit WEBOR, an Orange County Charter Review amendment which was proposed by Mr. O'Neal, approved by the Orange County Charter Review Commission on March 4, 2020, and which is to be placed on the ballot for Orange County voters on November 3, 2020.

3.      Speak Up Wekiva members are further negatively impacted based upon a reasonable belief that state preemption of WEBOR would result in the continued degradation and collapse of the Wekiva River and its springshed, as well as the Econlockhatchee River and other Orange County natural water bodies.

4.      Defendant, Ronald DeSantis ("Governor DeSantis"), is the governor of Florida and is sued in his official capacity.

## Jurisdiction and Venue

5.      This Court has subject-matter jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343.

3

6.     Plaintiff seeks remedies under 28 U.S.C. §§ 1651, 2201, and 2202 and 42 U.S.C. §§ 1983 and 1988.76.

7.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2).

## Facts Giving Rise to Complaint

8.     Orange County, Florida is a charter county under Article VIII, Section 1 (g) of the Florida Constitution.

9.     The Orange County Charter, Article VII, Section 702, provides that a Charter Review Commission ("CRC") shall be appointed by the Board of County Commissioners and serve a four-year cycle. The Orange County Charter provides that the CRC may, during its term, place proposed amendments and revisions of the Charter on the ballot at general elections. Such amendments or revisions do not require the approval of the Board of County Commissioners.

10.     On or about June 21, 2019, Charles O'Neal, individually and on behalf of Speak Up Wekiva, filed the proposed WEBOR Charter Amendment.

11.     On July 10, 2019, in a duly noticed public hearing, the full Orange County Charter Review Commission voted to create a committee of commissioners to study the proposed WEBOR amendment and to make a recommendation on whether it should be approved by the full commission. The assigned committee consisted of five members: an engineer, three lawyers, and a marine biologist who is a biology professor at the University of Central Florida.

4

12.     Over the next seven months the WEBOR committee met eleven times. The committee heard public comment and reviewed extensive literature including facts demonstrating that the Wekiva and Econlockhatchee Rivers, as well as other Orange County water bodies including Lake Apopka, were deteriorating and, in some cases, classified by the Florida Department of Environmental Protection as "impaired." The committee further heard testimony and received evidence that the two rivers and Orange County water bodies generally were declining and unsustainable.

13.     The committee also heard testimony and received evidence that although these Orange County rivers and water bodies were the subject of multiple state statutes and regulations, these state laws failed to stop or even meaningfully slow the deterioration of these water bodies.  During these meetings there was extensive discussion and revision of the proposed WEBOR amendment language. All of the meetings were attended by the Charter Review Commission counsel, who participated extensively in the crafting of the final WEBOR proposed amendment.

14.     On January 20, 2020, the WEBOR committee approved a final version of the WEBOR amendment, and unanimously voted that the final WEBOR amendment language be recommended favorably for passage by the full Charter Review Commission.

15. On March 4, 2020, in a duly noticed public meeting, the full Orange County Charter Review Commission voted 9-5 to approve the WEBOR amendment and place it on the November 3, 2020 ballot in Orange County.

16. The final WEBOR proposed amendment states as follows:

## SECTION IV—AMENDMENTS APPROVED BY THE 2020 CRC TO BE PLACED ON THE 2020 GENERAL ELECTION BALLOT

### A. Introduction.

This Charter amendment would provide for definitions, create natural rights for the waters of Orange County, the right to clean water, a private right of action and standing for citizens of Orange County to enforce these rights and injunctive remedies. The proposed amendment prohibits any governmental agency, non-natural person or corporate entity from intentionally or negligently polluting the Wekiva River and Econlockhatchee Rivers, or any other Waters within Orange County.

**B.** **Ballot Proposal:** The ballot title and question for Question #1 are as follows:

PROHIBITING POLLUTION OF THE WEKIVA RIVER, ECONLOCKHATCHEE RIVER AND ALL OTHER WATERS OF ORANGE COUNTY

Amending the charter by providing charter protections for the natural rights of the Wekiva and Econlockhatchee Rivers and all other Waters of Orange County by prohibiting pollution, providing a definition of Waters, providing a private right of action and standing for citizens of Orange County to enforce these protections against governmental agencies, non-natural persons or corporate entities that intentionally or negligently pollute the Waters, and providing for severability and exceptions.

Comptroller's Office Financial Impact: Indeterminate Fiscal Impact.

**C.** **Text Revisions**: Article 7 of the Orange County Charter is amended by adding Section 704.1. (Underline text is added to the charter).

6

## Section 704.1 – Right to Clean Water, Standing and Enforcement.

### A.  Natural Rights of Orange County Waters and Citizens.

(1)   The Wekiva River and Econlockhatchee River, portions of which are within the boundaries of Orange County, and all other Waters within the boundaries of Orange County, have a right to exist, Flow, to be protected against Pollution and to maintain a healthy ecosystem.

(2)  All Citizens of Orange County have a right to clean water by having the Waters of Orange County protected against Pollution.

### B.  Standing, Private Right of Action.

Orange County, municipalities within Orange County, any other public agency within Orange County, and all Citizens of Orange County shall have standing to bring an action in their own name or in the name of the Waters to enforce the provisions of this Section of the Charter. Such actions shall be filed in the Ninth Judicial Circuit Court in and for Orange County, Florida, or, where jurisdiction exists, in the United States District Court, Middle District of Florida, Orlando Division.

### C.  Violations.

It shall be unlawful and a violation of this Section of the Charter for any governmental agency, non-natural person or corporate entity to intentionally or negligently pollute the Wekiva River and Econlockhatchee Rivers within the boundaries of Orange County, or any other Waters within the boundaries of Orange County. Violations include the Pollution of Waters which exist exclusively on private property owned by the same person(s) or entity, but only where Pollution thereon interferes with or causes Pollution of other Waters within Orange County or unreasonably interferes with or is injurious to the health and welfare of others. This Section of the Charter applies only to violations that occur after the effective date of the amendment as provided in Subsection (H).

### D. Remedies.

(1) Remedies for violations of this Section of the Charter shall be injunctive and/or other equitable relief, including but not limited to a writ of mandamus requiring the violator, to the greatest extent reasonably possible, to restore the Waters at issue to the condition as it existed prior to being polluted by the violator. The prevailing party shall be entitled to recover its reasonable costs, including costs of expert witnesses.

(2) Attorneys' fees are not compensable unless the court determines that the action brought under this Section of the Charter is frivolous, vexatious, or is brought solely for the purpose of harassing the defendant. If such a finding is made, the Court may also award reasonable attorneys' fees to the defendant as a sanction.

**E. Exception.**

The provisions of the Section shall not apply to Constructed Wetlands.

**F. Definitions.**

(1) *"Citizen"* or *"Citizen of Orange County"* means an adult resident of Orange County with legal residence in the United States who has resided within the county for at least one (1) year prior to filing an action under this Section.

(2) *"Constructed Wetland"* means a non-natural swimming pool and any artificial wetland that uses natural processes involving wetland vegetation, soils, and their associated microbial assemblages to treat domestic wastewater, industrial water, greywater or stormwater runoff, to improve water quality.

(3) *"Flow"* shall have the same meaning as in FLA. STAT. Sec 373.042

(4) *"Pollutant"* means any substance or contaminant, whether manmade or natural, that is the source or cause of Pollution.

(5) *"Pollution"* shall have the same meanings as in FLA. STAT. § 376.031(17) and Rule 62-520.200(15), Florida Administrative Code, and means the non-natural presence in the Waters of Orange County of any one or more substances, contaminants, noise, or pollutants in quantities which

8

are or may be potentially harmful or injurious to human health or welfare, animals, fish, plant life, and water quality or which may unreasonably interfere with the enjoyment of life or property, including outdoor recreation.

(6) "*Waters*" shall have the same meaning as in Rule 62-520.200(25), Florida Administrative Code, and includes, but is not limited to rivers, lakes, streams, springs, impoundments, and all other waters or bodies of water within the boundaries of Orange County, including fresh, brackish, saline, tidal, surface or underground waters. Waters owned entirely by one person or entity are included, but only to the extent the pollution thereon interferes or is injurious to other Waters, property or persons within Orange County.

## G. Severability and Conflicts.

The rights and violations provided herein should be interpreted, to the greatest extent possible, in harmony with any superior state or federal law governing the same rights and conduct. To the extent any provision of this Section of the Charter impermissibly conflicts with any superior state or federal law governing the same conduct, such provision shall be severable and all other provisions shall remain fully enforceable.

## H. Effective Date.

This amendment shall become effective upon passage, which is the date certified by the Supervisor of Elections and shall not require further enabling legislation by the Orange County Board of County Commissioners.

17. On June 30, 2020, Defendant Governor DeSantis signed into law the 111-page "Florida Clean Waterways Act," which includes Section 403.412(9)(a):

A local government regulation, ordinance, code, rule, comprehensive plan, charter, or any other provision of law may not recognize or grant any legal rights to a plant, an animal, a body of water, or any other part of the natural environment that is not a person or political subdivision as defined in s.1.01(8) or grant such person or political subdivision any specific rights relating to the natural environment not otherwise

9

authorized in general law or specifically granted in the State Constitution.

## I. The United States Constitution Secures the Right of Local Self-Government to the People of all Municipalities of the United States

18.    The Due Process Clause of the Fourteenth Amendment states that no State shall "deprive any person of life, liberty, or property, without due process of law."  Rights protected by the Clause include most of the rights specifically enumerated in the Bill of Rights, along with those rights that are "so rooted in the traditions and conscience of our people as to be ranked as fundamental."  (Palko v. Connecticut, 302 U.S. 319, 325 (1937)).

19.    When considering whether a right is a fundamental right, the Courts [must] look to whether it is a right "deeply rooted in this nation's history and tradition," or one which is "fundamental to our scheme of ordered liberty." (McDonald v. City of Chicago, Ill., 561 U.S. 742, 767 (2010)).

20.    The identification and protection of fundamental rights is an enduring part of the judicial duty to interpret the Constitution, and requires Courts to exercise reasoned judgment in identifying interests of the person so fundamental that the State must accord them its respect.  As the United States Supreme Court recently instructed, "history and tradition guide and discipline the inquiry but do not set its outer boundaries when new insight reveals discord between the Constitution's

10

central protections in a received legal stricture, a claim to liberty must be addressed. (Obergefell v. Hodges, 135 S. Ct. 2584, 2598 (2015) (recognizing a Constitutional right to same-sex marriage)).

21.    Likewise, the Florida Supreme Court has emphasized its judicial duty to recognize and create new causes of action when necessary to protect individual rights, holding that common law "must keep pace with changes in our society" and "may be altered when the reason for the rule of law ceases to exist, or when the change is demanded by public necessity or required to vindicate fundamental rights." (Jews for Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1104 (Fla. 2008), quoting Stone v. Wall, 734 So. 2d 1038, 1043 (Fla. 1999)).

22.    Indeed,  the Court has noted that the "great fundamental object and principle of the common law was the protection of the individual in the enjoyment of all his inherent and essential rights and to afford him a legal remedy for their invasion." (Jews for Jesus at 1104, quoting Cason v. Baskin, 20 So. 2d 243, 250 (Fla. 1944)).

23.    Local, community self-government was the foundation of the early American colonies and is the foundation of American Constitutional Law.  The concept and exercise of community self-government in America dates back to the Mayflower Compact, adopted in 1620, over one hundred and fifty years before

Thomas Jefferson codified the principles of local self-government in the Declaration of Independence.   (Alexander Tsesis, *Self-government and the Declaration of Independence,* 97 Cornell L. Rev. 693, 751 (2012)).

24.    Moreover, local community self-government is the foundation of the American Declaration of Independence, which provides four fundamental principles of Constitutional Law: a. that certain rights – those of life, liberty, safety, and the pursuit of happiness – are natural rights, held by virtue of being human; b. governments are created to secure those natural rights; c. each government owes its existence to, and derives its power exclusively from, the community that creates it; and d. when governments become destructive of the people's natural rights, the people have a right – and a duty – to alter or abolish that government and establish new forums. (The Declaration of Independence, para. 2 (U.S. 1776) ("That all men. . . are endowed by their Creator with certain unalienable Rights; that amongst these are Life, Liberty, and the pursuit of Happiness.") ("That to secure these rights, Governments are instituted among Men . . . .") ("Deriving their just powers from the consent of the governed") ("Whenever any Form of Government becomes destructive of these ends, it is the Right of the People to alter or to abolish it, and to institute new Government, laying its foundation on such principles and organizing its powers in such forms, as to them shall seem most likely to effect their Safety and Happiness [I]t is their right, it is their duty, to throw off such Government " (sic)).

## II.    The Florida Constitution Also Recognizes the Right of Local Self-Government by Giving Broad Home Rule Authority to Florida Municipalities and Counties.

25.    The Florida Constitution also recognizes the community's right of local self-government. The first Constitution of the State of Florida, established in 1838, declared that "all political power is inherent in the people, and all free governments are founded on their authority, and established for their benefit; and therefore, they have, at all times, an inalienable and indefeasible right to alter or abolish their form of government, in such manner as they may deem expedient." (Fl Const. of 1838 at Art. I, Section 1.)

26.    The 1838 Florida Constitution provided that the right of local self-government shall "forever remain inviolate; and that all laws contrary thereto. . . shall be void." (Fl. Const. of 1838 at Art. I Section 27.)

27.    Despite this language, under the 1885 Florida Constitution all local governmental powers were dependent on a specific delegation of authority by the Florida Legislature through general law or special act.  This requirement of an express legislative grant reflected prevailing nineteenth century local government theory known as "Dillon's Rule." Under this approach to local power, "[t]he authority of local governments in all matters, including those purely local, was limited to that expressly granted by the legislature, or that which could be necessarily implied from an express grant." (Sparkman, The History and Status of Local

13

Government Powers in Florida, 25 U. of Fla., L.R., 271, 282 (1973); Malone v. City of Quincy, 62 So. 922 (Fla. 1913) (providing for a typical application of Dillon's Rule by the Florida Supreme Court)).

28. In 1968 Florida citizens voted to amend the Florida Constitution, abolish Dillon's Rule, and ensure that local, self-government remained inviolate by making Home Rule part of the Florida Constitution. The 1968 Constitution stated, in Article VIII, Section 2(b), that "Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise power for municipal purposes except as otherwise provided by law."

29. Further, the 1968 Constitutional Amendments, in Article VIII, Section 1 (g), provided charter counties with all powers of self-government not inconsistent with general law:

> (g) CHARTER GOVERNMENT. Counties operating under county charters shall have all powers of local self- government not inconsistent with general law, or with special law approved by vote of the electors. The governing body of a county operating under a charter may enact county ordinances not inconsistent with general law. The charter shall provide which shall prevail in the event of a conflict between county and municipal ordinances.

(emphasis supplied)

30. In 1971 the Florida Legislature enacted Chapter 125, Fla. Stat., implementing Article VIII, Section 1 (g) into general law. Section 125.01 states that

the legislative and governing bodies of counties, to the extent not inconsistent with general or special law, are empowered to carry on a list of described activities, a list which is not exclusive. These listed activities include providing parks, preparing and enforcing comprehensive plans, establishing and enforcing zoning, establishing and administering programs of conservation and air pollution control, and regulating water.

31.    In 1973 the Legislature adopted the Municipal Home Rule Powers Act, Chapter 166, which implemented Article VIII, Section 2 by legislatively granting municipalities the necessary governmental, corporate and proprietary power to:

> Conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law.

(Section 166.021(1), Fla. Stat.)

32.    In enacting Chapter 166, the Legislature further emphasized its intent to extend to municipalities a broad exercise of Home Rule powers:

> The provisions of this section shall be so construed as to secure for municipalities the broad exercise of home rule powers granted by the constitution. It is the further intent of the Legislature to extend to municipalities the exercise of powers for municipal governmental, corporate, or proprietary purposes not expressly prohibited by the constitution, general or special law, or county charter and to remove any limitations, judicially imposed or otherwise, on the exercise of home rule powers other than those so expressly prohibited.

(Section 166. 021 (4).

15

## COUNT 1

## 42 U.S.C. Section 1983 Action for Violation of the Ninth and Fourteenth Amendments of the United States Constitution—Facial Challenge of State Ceiling Preemption

33.     Plaintiff incorporates by reference the previous paragraphs.

34.     Section 403.412 (9)(a), like all state ceiling preemption laws, infringes upon the people's constitutional right of local, community self-government. Because, as asserted in the paragraphs above, this right to local, community self-government is fundamental, such infringement must satisfy strict scrutiny to be constitutional.

35.     The only state interest possibly inferred from Section 403.421(9)(a), or any other state ceiling preemption law, is one of uniformity: either the state of Florida desires to have no standards, or it desires to have one single standard for Florida water bodies and ecosystems, and for the health, safety and welfare of Florida citizens related to those matters.

36.     The state's interest of uniformity – by itself – is not a "compelling state interest." A state's desire to have either no standard, or just a single standard, for health, safety, and welfare in a field of law statewide, is not compelling enough to justify infringing upon the people's inherent right to locally legislate.

37.     Further, Section 403.412(9)(a) is not factually specific, and in fact is vague. It does not, for example, contain any language specifically regulating

16

pollutant levels in water bodies. If it did, then the legal inquiry would be to determine whether the state's interest was superior to the public health and environmental protections of these water bodies as codified by the municipal laws, which would require only a "rational basis" test.

38.     Because Section 403.412(9)(a), like all general, non-factually based state ceiling preemption laws, sets out no compelling state interest, it is constitutionally facially invalid.

## COUNT 2

### 42 U.S.C. Section 1983 Action for Violation of the Ninth and Fourteenth Amendments of the United States Constitution--"As-Applied" Challenge of State Ceiling Preemption

39.     Plaintiff incorporates by reference the previous paragraphs.

40.     In addition to being facially unconstitutional for lack of a compelling state interest, Section 403.412(9)(a) is unconstitutional as applied to the members of Speak Up Wekiva and all Orange County citizens, who through a duly authorized Orange County Charter process, lawfully succeeded in having the WEBOR charter amendment placed on the November Orange County ballot.

41.     As stated in paragraph 37, the statute contains no factual language concerning regulation of Orange County water bodies. Instead, it only in general and incomprehensibly vague language purports to prohibit Orange County citizens and the Orange County Charter Review Commission from taking any action whatsoever

which either "recognizes" or gives any "rights" to any water body in Orange County, or to any other aspect of the "natural environment." Such blanket prohibition violates the rights of citizens of Orange County, including members of Speak Up Wekiva, from their constitutionally protected right to local, self-government, and to protect their health, safety and welfare.

42. Moreover, because the statute contains no language addressing Orange County water bodies, it is not narrowly tailored to attain any state compelling interest by the least restrictive means possible regarding Orange County water bodies as addressed in WEBOR.

43. Therefore, in addition to its facial invalidity, Section 403.412(9)(a) is unconstitutional, void and invalid as applied to the members of Speak Up Wekiva and to all Orange County citizens

## COUNT 3

### Section 403.421(9)(a) Violates the Fourteenth Amendment Because it is Unconstitutionally Vague

44. Plaintiff incorporates by reference the previous paragraphs.

45. The Fourteenth Amendment due process clause requires that in order to be constitutional, a statute must be written in a manner that citizens of ordinary intelligence can understand it, that all potentially vague terms be defined, and that it states explicitly the practices that are required or prohibited. (See, e.g., Federal

18

Communications Commission v. Fox Television Stations, Inc. 567 U.S. 239 (2012) (citing Connally v. General Const. Co., 269 U.S. 385 (1926)).

46.      Section 403.412(9)(a) contains two parts. The first part states:  "[A] local government regulation, ordinance, code, rule, comprehensive plan, charter, or any other provision of law may not recognize or grant any legal rights to a plant, an animal, a body of water, or any other part of the natural environment that is not a person or political subdivision as defined in s. 1.01(8) . . . not otherwise authorized in general law or specifically granted in the State Constitution."

47.      Section 1.01(3), Fla. Stat., defines 'person' to include individuals, children, firms, associations, joint adventures, partnerships, estates, trusts, business trusts, syndicates, fiduciaries, corporations, and all other groups or combinations.

48.      Section 1.01(8), Fla. Stat., defines 'political subdivision' to include "counties, cities, towns, villages, special tax school districts, special road and bridge districts, bridge districts, and all other districts in the state."

49.      The first part of Section 403.412(9)(a) is unconstitutionally vague because it provides no definitions, descriptions, context or limitations as to what it means to "recognize or grant any legal rights" to the natural environment. Such language, for example, seemingly prohibits all local governments from recognizing or legislating any protections for any natural entity in the entire "natural

environment," unless such protections are already part of the general law or the Florida Constitution.

50.     The second part of the statute states that these local governmental laws and regulations may not "grant such person or political subdivision **any specific rights relating to the natural environment not otherwise authorized in general law or specifically granted in the State Constitution.**" (emphasis supplied).

51.     This language is not only vague, it is incomprehensible. As such, it "fails to give adequate notice of what conduct is prohibited and which, because of its imprecision, may also invite arbitrary and discriminatory enforcement." (Southeast Fisheries Ass'n, Inc. v. Department of Natural Resources, 453 So. 2d 1351, 1353 (Fla. 1984)).

52.     This portion of the statute would prohibit any local government, including municipalities, from granting any 'persons'—natural or corporate--any rights "relating to" the natural environment. Such granting of rights would include a vast array of things routinely done by local governments, since a large percentage of what local governments do is "related to the natural environment," and not specifically prescribed in general law.     Such language is nonsensical, indeterminable, vague and unconstitutional.

53.     Further, this language expressly forbids any local government from enacting ordinances, regulations, codes, rules, comprehensive plans or charters

granting itself (as a section 1.01(8) political subdivision) any specific rights "related to the natural environment." As written this language would preclude all local governments from enacting laws authorizing legislation or promulgating any rules or regulations bearing any relationship to the natural environment, unless such laws or regulations were already in the general law or Florida Constitution.

54. Moreover, this language expressly bans much of what charter counties and municipalities are authorized to do under Article VIII, Sections 1 and 2 of the Florida Constitution since charter counties and municipalities may enact any legislation not inconsistent with general law or the Florida Constitution, and much of that legislation relates to the natural environment. This language would eviscerate the constitutional and statutory rights of charter counties and municipalities through legislative means and return the pre-1968 "local bill evil" to Florida. (State v Orange County 281 So. 2d 310, 312 (Fla. 1973).

55. "Natural environment" is not defined in Florida law, but has been described by scholars as encompassing all living and non-living things occurring naturally. The term is most often applied to the Earth or some parts of the Earth. This environment encompasses the interaction of all living species, climate, weather and natural resources that affect human survival and economic activity. (Johnson, D.L.; Ambrose, S.H.; Bassett, T.J., Bowen, M.L.; Crummey, D.E.;

Isaacson, J.S.; Johnson, D.N.; Saul, M; Winter-Nelson, A.E. (1997). "Meanings of Environmental Terms." Journal of Environmental Quality. 26 (3): 581-589.)

56. Section 403.412(9)(a) strips counties and municipalities from creating local laws which protect the health, safety and welfare of their citizens from an infinite number of issues "relating to the natural environment," unless already specifically prescribed in a Florida statute or in the Florida Constitution.

57. For example, within the three principal components of the natural environment: air, water and land:

> A. Section 403.412 (9)(a) preempts local governments' ability to legislate protections to its citizens from the spread of airborne diseases and viruses such as COVID, including requiring the use of masks, social distancing, and decisions whether to keep local businesses and schools open;

> B. Section 403.412 (9)(a) preempts local protections for waterways, water resources and drinking water unique to a particular municipality or county during a time when virtually all of Florida's significant waterways are deteriorating, impaired, and/or on the verge of collapse;

C.  Section 403.412 (9)(a) preempts local governments from restricting and fashioning legal remedies for soil contamination unique to a particular region resulting from industries in that region.

58.  Section 403.412(9)(a) could even weaponize the state to constrain or prohibit local government legislation to protect its citizens from hurricanes and climate change, including but not limited to setting minimum building construction requirements, implementing flood control such as dredging and seawall construction, requiring removal of trees near power lines, and legislating evacuation protocols.

59.  Moreover, per Section 57.112, Fla. Stat., local governments may be liable for attorney fees and costs in a civil action filed on the grounds that the local regulation is preempted by the State. The vague language in Section 403.412(9)(a), coupled with this fee-shifting scheme, would subject local governments to attorney's fees and costs simply for trying to implement a local ordinance "related to" the natural environment.

60.  In fact, the mere threat of such costs, coupled with the total absence of standards, rules and clarity in Section 403.412(9)(a) would have an impermissible chilling effect on virtually any local governmental enactment addressing environmental regulation or any aspect of the natural environment.

61.     Because Section 403.412(9)(a) cannot be understood by citizens or local government officials of ordinary intelligence, it is so "vague and indefinite as really to be no rule or standard at all."   (Seniors Civil Liberties Ass'n, Inc. v. Kemp, 965 F.2d 1030, 1036 (11th Cir. 1992) (citing Boutilier v. INS, 387 U.S. 118, 123 (1967). As such, it violates the Due Process Clause of the Fourteenth Amendment, and is facially unconstitutional, void and invalid

## COUNT 4

### Section 403.421(9)(a) violates Article VIII, Section 1 (g) of the Florida Constitution by Impermissibly Infringing upon Charter Counties' Right to Enact County Ordinances and Charter Provisions "Not Inconsistent" with General Law

62.     Plaintiff incorporates by reference the previous paragraphs.

63.     Article VIII, Section 1(g) of the Florida Constitution provides in relevant part:

> (g) CHARTER GOVERNMENT. Counties operating under county charters shall have all powers of local self - government not inconsistent with general law, or with special law approved by vote of the electors. The governing body of a county operating under a charter may enact county ordinances not inconsistent with general law.

64.     Section 403.412(9)(a), however, provides that no local government of any type—which would include charter counties—may grant a 'person' (natural or non-natural) or political subdivision (any type) any specific rights relating to the natural environment unless "otherwise authorized in general law or specifically granted in the State Constitution."

24

65.     There is a vast difference between that which is "authorized in general law or specifically granted in the State Constitution," and that which is "not inconsistent with general law." Since the 1968 Florida Constitutional amendments, a charter county is not constrained to act only as authorized by general law or a specific grant by the Florida Constitution. Rather, absent an inconsistent general law, a charter county has the complete power to act by ordinance or through its charter provisions for any county purpose.

66.     A statutory limitation on charter counties to do only what is already authorized in general law or by the Florida Constitution is precisely what existed pre-1968 under Dillon's Rule, which was expressly abolished and buried by the 1968 Home Rule Constitutional Amendments.

67.     Limiting charter county action to only that "authorized by general law or specifically granted in the State Constitution" completely strips charter counties of their constitutional status and renders them indistinguishable from non-charter counties.

68.     Because Section 403.412(9)(a) infringes upon charter county's right to enact ordinances and charter amendments not inconsistent with general law, it is unconstitutional and invalid.

## COUNT 5

## Section 403.412(9)(a) Violates Article VIII, Section 2 of the Florida Constitution

**by Impermissibly Infringing Upon Municipalities' Power to Enact Municipal Ordinances "Not Inconsistent" with General Law.**

69.   Plaintiff incorporates by reference the previous paragraphs.

70.   Article VIII, Section 2 of the Florida Constitution provides:

> (b)  POWERS. Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and <u>may exercise any power for municipal purposes except as otherwise provided by law</u>. Each municipal legislative body shall be elective.

(emphasis supplied).

71.   As described in paragraphs 31-32, The Municipal Home Rule Powers Act legislatively implemented Article VIII, Section 2, and grants municipalities the power to conduct municipal government, functions and services for any municipal purpose, except as otherwise provided by law.

72.   Section 166.021(2), Fla. Stat., defines "municipal purpose" as "any activity or power which may be exercised by the state or its political subdivisions."

73.   As discussed in paragraphs 60-63, Section 403.412(9)(a) prohibits any municipality from granting any "person" or political subdivision any specific rights relating to the natural environment unless specifically authorized in general law or by the Florida Constitution.

74.   As with charter counties, such requirement that municipalities only do that which is already authorized by general law or the Florida Constitution violates

municipalities' constitutional and statutory right to legislate by ordinance for any municipal purpose whatsoever, unless it is "inconsistent" with general law.

75.     Because Section 403.412(9)(a) infringes upon municipalities' constitutional and statutory right to enact ordinances and take all actions not inconsistent with general law, it is unconstitutional and invalid.

## COUNT 6

### Section 403.412(9)(a) Violates Florida Law's Mandate that Express Preemption Statutes Require a Specific and Clear Statement of Intent to Preempt an Area or Field

76.     Plaintiff incorporates by reference the paragraphs above.

77.     As discussed in paragraphs 66-69, both Article VIII, Section 2(b) and Section 166.021 provide that municipalities shall have the governmental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions, and render municipal services, and may exercise any power for municipal purposes, except when expressly prohibited by law.

78.     Section 166.021(1)(3)(c) provides that the legislative body of each municipality has the power to enact legislation concerning any subject matter upon which the state Legislature may act, except, "Any subject **expressly** preempted to state or county government by the constitution or by general law." (emphasis supplied).

79.     Florida law requires express preemption statutes to contain a specific legislative statement of the intent to preempt, and further that "the preemption of a field (be) accomplished by clear language." (D'Agastino v. City of Miami, 220 So. 3d 410, 421 (Fla. 2017), (citing Sarasota Alliance for Fair Elections, Inc. v. Browning, 28 So. 3d 880 (Fla. 2010)). Section 403.421(9)(a) does neither.

80.     The statute contains no clear statement—or any statement at all--that the Legislature intended to have exclusive jurisdiction over any particular area or that it intended to occupy any particular area or field. (D'Agastino; see also City of Hollywood v Mulligan, 934 So. 2d 1238 (Fla. 2006), citing approvingly, Phantom of Clearwater v Pinellas County, 894 So. 2d 1011 (Fla. 2d DCA 2005).

81.     Further, as discussed in paragraphs 41 and 46—53, the statute gives no clear description of any particular area or field itself which the state could lawfully occupy exclusively, and its language is vague and nonsensical.

82.     Because Section 403.421(9)(a) contains no specific, clear statement that the Legislature intended to preempt local government as to any area or field, and because it fails to even describe clearly any area or field it could occupy, it is invalid under Florida law.

## COUNT 7

## Senate Bill 712 Unconstitutionally Violates the "Single Subject Rule" Provided in Article III, Section 6 of the Florida Constitution

83.     Article III, section 6 of the Florida Constitution provides, in relevant part, that "[e]very law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title."

84.     As the Florida Supreme Court has held, there are three purposes underlying the single subject rule: (1), to prevent hodgepodge or "logrolling" legislation, i.e., putting two unrelated matters in one act; (2), to present surprise or fraud by means of provisions and bills of which the titles give no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and (3), to fairly apprise the people of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon. State v. Thompson, 750 So. 2d 643, 646 (Fla. 1999).

85.     As more recently stated by the Court, the purpose of this constitutional prohibition against a plurality of subjects in a single legislative act is to "prevent a single enactment from becoming a cloak for dissimilar legislation having no necessary or appropriate connection with the subject matter. (Tormey v. Moore, 824 So. 2d 137, 139 (Fla. 2002)).

86.     Senate bill 712 is titled:  "Clean Waterways Act," and states that it is, "an Act relating to environmental resource management."  The bill consists of 111 pages and adds new legislation and amends forty-five Florida different Florida statutes.  The primary topics of Senate Bill 712 are state agency organization and

management of onsite sewage and wastewater, including the transfer of the Onsite Sewage Program from the Department of Health to the Department of Environmental Protection; a state agency review of the bottled water industry and its effect on Florida springs; state agency study and management of agricultural practices concerning fertilizer and nutrients in waterways; and state agency study and management of biosolids.

87.   On Page 82 of the bill, the Legislature inserted Section (9)(a) into Section 403.412, which is titled "Environmental Protection Act."

88.   There is no natural or logical connection between SB 712's title, subject matter and provisions, and Section 403.412(9)(a). Not only does Amendment (9)(a) not address "Clean Waterways" or "environmental resource management," it is contrary to those descriptions. It prohibits local governments from, among other things, enacting laws which would enhance legal protections for waterways, as well as any other aspect of the natural environment, unless already authorized in general law or by the Florida Constitution.

89.   Further, no other part of Senate Bill 712 addresses plants, animals or "any other part of the natural environment," other than water.

90.   No other part of Senate Bill 712 addresses any type of local government recognizing or granting specific rights to persons, natural or non-natural, relating to any aspect of the natural environment, or addresses any type of local government

recognizing or granting specific rights to political subdivisions relating to any aspect of the natural environment.

91.     Finally, no other part of Senate Bill 712 addresses the authority of any type of local government to enact legislation on any subject.

92.     The connection between Section 403.412(9)(a) and the rest of SB 712 is neither natural nor logical, and there is no reasonable explanation for "how the provision is (a) necessary to the subject or (b) tends to make effective or promote the objects and purposes of legislation included in the subject." (Franklin v. State, 887 So. 2d 1063, 1078 (Fla. 2004)).

93.     Because Section 403.412 (9)(a) violates Florida's single-subject rule in Article III, Section 6 of the Florida Constitution both as to title and subject matter, it is unconstitutional and invalid under Florida law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for an order and judgment:

A.     Declaring that Section 403.412(9)(a), Fla. Stat. is facially unconstitutional under the Ninth and Fourteenth Amendments to the United States Constitution by infringing upon plaintiff members' and Florida citizens' constitutional right to local, self-government, and is thus devoid of any legal force or effect;

B.     Declaring that Section 403.412(9)(a) is unconstitutional as applied to Plaintiff by infringing upon plaintiff members' and Florida citizens' right to local, self-government, including having WEBOR placed on the November 2020 general election ballot in Orange County;

C.     Declaring that Section 403.412(9)(a) violates Article 1, Section 1 of the Florida Constitution by violating Florida plaintiff members' and Florida citizens' right to local, self-government, and thus is invalid and void;

D.     Declaring that Section 403.412(9)(a) is unconstitutionally vague under the Fourteenth Amendment of the United States Constitution and is thus invalid and void;

E.     Declaring that Section 403.412(9)(a) violates Article VIII, Section 1(g) and Article VIII, Section 2(b) of the Florida Constitution, as well as the Municipal Home Rule Powers Act and Chapter 125, Florida statutes, and is thus invalid and void;

F.     Declaring that Section 403.412(9)(a) fails to set out a clear intent to preempt any area or field, and further fails to adequately identify and describe any such area or field, and thus is invalid and void;

G.     Enjoining Defendant from enforcing Section 403.412(9)(a);

H.    Enjoining Defendant from applying Section 403.421(9)(a) so as to prohibit the placement of the WEBOR proposed Orange County charter amendment from being placed on the November 2020 Orange County ballot;

I.    Awarding Plaintiff its reasonable costs, including attorney's fees, incurred in bringing this action, pursuant to 42 U.S.C. § 1988; and

J.    Granting such other and further relief as this Court deems just and proper.

Respectfully submitted this 1st day of July, 2020.

Steven M. Meyers
Meyers & Stanley
1105 E Concord Street
Orlando, Fl 32803
407-849-0941
(f) 407-849-1860
smm@meyersstanley.com
Attorney for Plaintiff
Fla. Bar No.: 0755869